**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800,
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for Plaintiffs **RANDEEP SINGH DHILLON; PINDER SINGH; GURPREET SINGH**

## IN AND FOR THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| RANDEEP SINGH DHILLON; PINDER SINGH; and, GURPREET SINGH;<br><br>Plaintiffs,<br><br>v.<br><br>BERNARD C. BARMANN, JR., a judge; ERIC BRADSHAW, a presiding judge; SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN; an administrative body; APPELLATE COURT OF CALIFORNIA, an administrative body; and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1. INJUNCTIVE RELIEF;**<br>**2. NEGLIGENCE;**<br>**3. RACIAL DISCRIMINATION - FOURTEENTH AMENDMENT - Title 42 U.S. Code §1983;**<br>**4. DECLARATORY RELIEF;**<br><br>**JURY DEMAND** |

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

# FEDERAL COMPLAINT

## INTRODUCTION

COMES NOW, PLAINTIFFS hereby submit this COMPLAINT, and alleges the below factual allegations:

## PARTIES

1. Plaintiff RANDEEP SINGH DHILLON is the plaintiff, and individual person, hereinafter referred to as "PLAINTIFF DHILLON."

2. Plaintiff PINDER SINGH is the plaintiff, and individual person, hereinafter referred to as "PLAINTIFF PINDER."

3. Plaintiff GURPREET SINGH is the plaintiff, and individual person, hereinafter referred to as "PLAINTIFF GURPREET."

4. Plaintiff JASPREET SINGH is the plaintiff, and individual person, hereinafter referred to as "PLAINTIFF JASPREET." (collectively, "PLAINTIFFS.")

5. Defendant BERNARD C. BARMANN, JR., is a superior court judicial officer, and individual person, hereinafter referred to as "DEFENDANT BCB."

6. Defendant SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN is an administrative body and courthouse. (collectively, "DEFENDANTS.")

7. PLAINTIFFS remain ignorant of the true names and capacities of DEFENDANTS, sued herein as DOES 1-10, inclusive, and therefore, sues

these Defendants by such fictitious names.  PLAINTIFFS presently remain unaware of the roe names or capacities of defendants named herein as DOES 1-10, inclusive, and PLAINTIFF will seek leave of Court to allege their true names and capacities after the same have been ascertained.

8. Defendants remain informed and believe, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of defendants. The named defendants and are sometimes hereafter referred to, collectively and/or individually, as "defendants."

9. PLAINTIFFS remain informed and believe and thereon allege that each of the DEFENDANTS herein and are in some manner legally responsible for the acts and omissions alleged herein and actually and legally caused and contributed to various injuries and damages alleged herein.

10. PLAINTIFFS remain informed and believe, and thereon allege that at all times herein mentioned, each of the DEFENDANTS were the agent, servant, partner, joint venturer, and/or employee of each of the other DEFENDANTS,

and in doing the things hereinafter alleged, were acting within the course and scope of said agency and/or employment, and with the permission.

11. All DEFENDANTS were responsible for the events and damages alleged herein, including on the following bases: (a) DEFENDANTS committed the acts alleged; (b) at all relevant times, cone or more of the DEFENDANTS were the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for PLAINTIFFS' damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1346(b)(1), because they arise under federal law and because the Federal Tort Claims Act (FTCA) is implicated.

13. As a direct and proximate result of the unlawful acts of Defendants, Plaintiffs have suffered and continue to suffer damages in amounts to be proved at trial, but no less than $3.50 MILLION.

14. This Court is the proper venue pursuant to 28 U.S.C. § 1402(b) as Plaintiffs reside within this judicial district.

///

## FACTUAL ALLEGATIONS

15. Plaintiffs do not intend to "shop" for a judge.

16. Neither is this a complaint for any unfavorable and/or adverse outcome from the judicial officer BCB in the state court action.

17. This is a suit for *ultra vires* action of judicial officers, and the court system.

18. This is a valid Fourteenth Amendment lawsuit. Fluker v. Sutter (N.D.Cal. Nov. 19, 1991) No. C-91-3977-SC; Papadakis v. Zelis (1992) 8 Cal.App.4th 1146.

19. This is a lawsuit for invidious and systemic racial discrimination from the judicial officer BCB.

20. Consonant with the court's duty to protect the parties and the court system as a whole from such abusive conduct by resolute attorneys with apparently unlimited resources, the federal court must impose believe significant sanctions in order to deter judicial officers, clerks, and others from the frauds they continue to visit upon the court system and their adversaries. (Code Civ. Proc., § 128.5; In re Marriage of Quinlan (1989) 209 Cal.App.3d 1417, 1422-1423 [ 257 Cal.Rptr. 850]; In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650 [ 183 Cal.Rptr. 508, 646 P.2d 179]; Finnie v. Town of Tiburon (1988) 199 Cal.App.3d 1, 17 [ 244 Cal.Rptr. 581].)

21. Plaintiffs do not think their claims must be deterred by sanctions.

5
COMPLAINT

22. Plaintiffs bring this action to ensure such repetitive abusive conduct does not occur repeatedly; that the judicial officers and courts have checks-and-balances with accountability towards the conduct of judicial officers; and that Plaintiffs not have a judicial officer, such as BCB, laden with bias and prejudice towards each of them, and their counsel.

23. This is a case where Plaintiffs' civil and constitutional rights were denied as the judge DEFENDANT BCB in the case did deny multiple requests to have plaintiffs, and plaintiffs' counsel appear to prosecute their matters; did state that motions, as filed by the plaintiffs, would be heard, did illegally sanction and cause other officers such as sheriff to act without case, did knowingly ignore California state statutes, and not only violated due process of law, but denied equal protection under the law.

24. Further, this is a case where Plaintiffs' safety and security were at issue in the courtroom, and in the premises; where the judicial officer BCB had knowledge of, and should have had knowledge of; yet acted with indifference, and without causing to deter such actions occurring in their presence and immediate view by those white lawyers and white sheriffs of the court.

25. This is a Bivens action against Defendant BCB.

26. Judicial officer BCB, the deputy sheriff, the clerk, and/or administrative officer, each is using pretext as a method of employing laws, codes and statutes to engage in invidious and systemic racial discrimination.

27. Defendant BCB is a state actor. Defendant Kern County Superior Court is a state actor.

28. The invidious and systemic discrimination by state actors, and agents, employees, and related of state actors falls under the 1983 Action.

29. Plaintiff Pinder claims age discrimination, racial discrimination, and further discrimination to a non-English speaker. Plaintiff Pinder was not allowed to have his counsel present at a hearing, and was told he could "listen in" to the proceedings. Plaintiff Pinder was not allowed to have a trial on the merits.

30. Plaintiff Dhillon claims racial discrimination. Plaintiff Dhillon was ostracized for his race. Plaintiff Dhillon was not given a jury trial even when he posted jury fees.

31. Plaintiff Gurpreet claims racial discrimination. Plaintiff Gurpreet was not allowed to have a trial on the merits.

32. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiffs were damaged in amounts to be determined at trial, but no less than $3.50 million in damages, because of the *ultra vires* action.

33. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

34. Defendants' conduct warrants injunctive relief.

35. Defendants' conduct warrants declaratory relief.

36. Plaintiffs request the relief requested below in the prayer for relief.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### INJUNCTIVE RELIEF

37. Plaintiffs incorporate via reference and restate the allegations contained in the preceding paragraphs as though set forth in full herein.

38. The reach of judicial immunity, which the United States Supreme Court considered in the wake of Consumers Union in Pulliam v. Allen (1984) 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 ( Pulliam ), concluding judicial immunity did not, in that case, bar injunctive relief.

39. The high court first observed that the appellate courts that had addressed the issue were "in agreement" that judicial immunity does not categorically bar injunctive relief. ( Id. at p. 528, 104 S.Ct. 1970.) The court next pointed out that while at common law "there was no such thing as an injunction against a judge" due to the jurisdictional limitations of the English courts ( id. at p. 529, 104 S.Ct. 1970 ), a "parallel" could be found "in the collateral prospective relief available against judges through the use of the King's prerogative writs." ( Ibid. ) After an extensive discussion of the historical use of such writs, the court concluded this indicated there was no "inconsistency" between judicial immunity principles protecting the courts and judiciary from harassing litigation, and the availability of collateral injunctive relief "in exceptional cases." ( Id. at p. 536, 104 S.Ct. 1970.)

40. The high court then reviewed its own precedent, observing it was "fully consistent with the common law's rejection of a rule of judicial immunity from prospective relief" and the court had never embraced a rule of judicial immunity from such relief. ( Pulliam , supra , 466 U.S. at p. 536, 104 S.Ct. 1970.) It pointed out "injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards," and that the requirements for obtaining equitable relief—an inadequate remedy at law and irreparable harm—"severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." ( Id. at pp. 537-538, 104 S.Ct. 1970.)

41. As a result of the court's conclusion that judicial immunity did not foreclose prospective injunctive relief, the judge against whom such relief had been granted (based on actions that were indisputably judicial in character) was subject to an attorney fee award under title 42 United States Code section 1988. ( Pulliam , supra , 466 U.S. at pp. 541-544, 104 S.Ct. 1970.)

42. Here, Defendant BCB violated a declaratory decree, and/or this is a situation, where declaratory relief is unavailable, thus plaintiffs have an end-run around judicial immunity.

43. Defendants have caused irreparable harm and damages to each Plaintiff.

44. Defendants' harm is imminent and immediate.

45. Defendants' harm is on-going.

46. Defendants have caused harm to each plaintiff while in the courthouse whether appearing in-person, and/or remotely.

47. Plaintiffs experienced harm, and incurred damages along with attorneys' fees.

48. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has been damaged in amounts to be determined at trial, but no less than $3.50 million in damages.

49. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

50. Plaintiffs request the relief requested below in the prayer for relief.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

51. Plaintiffs incorporate by reference and restate the allegations contained in the preceding paragraphs as though set forth in full herein.

52. Defendants have a fiduciary duty towards Plaintiffs.

53. Defendants have a fiduciary duty to keep Plaintiffs safe and secure within the premises of the courthouse, and while appearing.

54. Defendants have a fiduciary duty to provide due process of notice and opportunity to be heard.

55. Defendants breached this fiduciary duty towards Plaintiffs each time that Plaintiffs safety and security was breached and harmed.

56. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has been damaged in amounts to be determined at trial, but no less than $3.50 million in damages.

57. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

58. Plaintiffs request the relief requested below in the prayer for relief.

## THIRD CAUSE OF ACTION

## RACIAL DISCRIMINATION – FOURTEENTH AMENDMENT –

## Title 42 U.S. Code §1983

59. Plaintiffs incorporate by reference and restate the allegations contained in the preceding paragraphs as though set forth in full herein.

60. Title 42 U.S. Code §1983 and other federal civil rights laws for the redress of violations of these rights, applies to "state action", and the actions of county and municipal government. See Fonda v. Gray, 1983(CA 9) CAL 707 F.2d. 435.)

61. Defendant BCB is a state actor. Defendant Kern County Superior Court is a state actor.

62. The invidious and systemic discrimination by state actors, and agents, employees, and related of state actors falls under the 1983 Action.

63. Plaintiff Pinder claims age discrimination, racial discrimination, and further discrimination to a non-English speaker. Plaintiff Pinder was not allowed to

have his counsel present at a hearing, and was told he could "listen in" to the proceedings. Plaintiff Pinder was not allowed to have a trial on the merits.

64. Plaintiff Dhillon claims racial discrimination. Plaintiff Dhillon was ostracized for his race. Plaintiff Dhillon was not given a jury trial even when he posted jury fees.

65. Plaintiff Gurpreet claims racial discrimination. Plaintiff Gurpreet was not allowed to have a trial on the merits.

66. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has been damaged in amounts to be determined at trial, but no less than $3.50 million in damages.

67. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

68. Plaintiffs request the relief requested below in the prayer for relief.

## FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF

69. Plaintiffs incorporate by reference and restate the allegations contained in the preceding paragraphs as though set forth in full herein.

70. It is generally recognized by the federal courts that judicial immunity, unlike legislative immunity, does not foreclose suit for prospective declaratory relief and in limited circumstances does not foreclose injunctive relief. (See Justice

Network Inc. v. Craighead County (8th Cir. 2019) 931 F.3d 753, 763- 764 ( Justice Network .))

71. Judicial immunity "does not absolutely insulate judicial officers from declaratory or injunctive relief," (Greene v. Zank (1984) 158 Cal.App.3d 497, 204 Cal.Rptr. 770 (Greene).)

72. In this case, there is an "actual controversy" in Plaintiffs entertaining a suit for declaratory relief. (See, e.g., Communities for a Better Environment v. State Energy Resources Conservation & Development Com. (2017) 19 Cal.App.5th 725, 732-734, 227 Cal.Rptr.3d 486 ; Environmental Defense Project of Sierra County v. County of Sierra (2008) 158 Cal.App.4th 877, 885, 70 Cal.Rptr.3d 474.

73. An actual controversy, such as in this case, against Defendant BCB, can "encompass[ ] a probable future controversy relating to the legal rights and duties of the parties," although a "probable future controversy must be ripe," meaning " 'the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (Ibid. )

74. Plaintiff Pinder claims age discrimination, racial discrimination, and further discrimination to a non-English speaker. Plaintiff Pinder was not allowed to have his counsel present at a hearing, and was told he could "listen in" to the proceedings. Plaintiff Pinder was not allowed to have a trial on the merits.

75. Plaintiff Dhillon claims racial discrimination. Plaintiff Dhillon was ostracized for his race. Plaintiff Dhillon was not given a jury trial even when he posted jury fees.

76. Plaintiff Gurpreet claims racial discrimination. Plaintiff Gurpreet was not allowed to have a trial on the merits.

77. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has been damaged in amounts to be determined at trial, but no less than $3.50 million in damages.

78. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

79. Plaintiffs request the relief requested below in the prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully seek judgment against all Defendants as follows:

1. That Plaintiffs be awarded $3.50 million according to proof at the time of trial.

2. That Plaintiffs be awarded general, actual, and special damages according to proof at the time of trial.

3. That Plaintiffs be awarded incidental, compensatory, and expectancy damages according to proof at the time of trial.

4. That Plaintiffs be awarded punitive damages according to proof at the time of trial.

5. That Plaintiffs be awarded treble damages for distress, stress, and anguish, according to proof at the time of trial.

6. That Plaintiffs be awarded pre-and post-judgment interest accrued to date.

7. That Plaintiffs be awarded costs and fees of suit incurred herein.

8. That Plaintiffs be awarded their reasonable attorneys' fees incurred in this action.

9. That Plaintiffs be awarded such other and further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial for all issues so triable that are raised herein or that hereinafter may be raised in this action.

///

DATED:  May 19, 2023

*Respectfully submitted,*

*/S/ Reshma Kamath*

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath,
Counsel for RANDEEP SINGH DHILLON; PINDER SINGH; JASPREET SINGH; GURPREET SINGH